IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

---

A.S., a minor, by his next friends AMY A., mother and JEFF S., father; and A.B., a minor, by her next friends JULIE B., mother and ROSS B., father,

                      Plaintiffs,

        v.

BILL LEE, in his official capacity as Governor of Tennessee, *et al.*,

                      Defendants.

No. 3:21-cv-00600
JUDGE RICHARDSON

---

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITIONS AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff A.B.[1] respectfully submits this Reply to the Response of the State Defendants[2] and the School Defendants[3] in opposition to Plaintiff's Motion for a Preliminary Injunction.

## INTRODUCTION

Despite 60 combined pages in their Responses, Defendants do not even grapple with the controlling law of this case, *Dodds v. United States Department of Education*, 845 F.3d 217 (6th Cir. 2016). *Dodds*, binding precedent here, declined to stay a preliminary injunction permitting a

---

[1] On September 10, 2021, Plaintiff A.S. filed a motion to withdraw as a party from this action. Accordingly, this Reply is submitted only on behalf of Plaintiff A.B.

[2] Defendants Bill Lee, in his official capacity as Governor of Tennessee ("Governor Lee"), and Herbert Slatery III, in his official capacity as Attorney General of Tennessee ("AG Slatery"), are collectively referred to as the "State Defendants." The State Defendants' Response (ECF No. 27) is cited herein as "State Br."

[3] Defendants Wilson County Board of Education and Jeff Luttrell, in his official capacity as Director of the Wilson County Schools, are collectively referred to as the "School Defendants." The State Defendants and School Defendants are referred to collectively as the "Defendants." The School Defendants' Response (ECF No. 58) is cited herein as "School Br."

transgender student to use the school restrooms that corresponded with her gender identity. Defendants also ignore the fact that every other federal appellate court to have considered discriminatory policies like the School Facilities Law[4] has found that they violate Title IX, the Equal Protection Clause, or both. There is no reason to depart from these well-reasoned decisions.

The Defendants' Responses also contain inherent contradictions that belie their own arguments. For example, State Defendants claim they are entitled to sovereign immunity, that Plaintiff lacks standing, and that her claims are not ripe because Governor Lee and AG Slatery allegedly have no role in enforcing the Law, which contains a private right of action. Yet, they also claim they will be harmed by a preliminary injunction because it would prevent them from "upholding a duly enacted law," thus completely undercutting their defenses. State Br. at 28. The School Defendants also claim that a preliminary injunction would violate the privacy and safety interests of other students, but fail to offer *any* evidence in support of these spurious claims while completely overlooking the fact that A.B. has used the girls' bathroom at school under the Support Plan and has done so without incident, thus proving the contrary.

For these reasons and those discussed below, a preliminary injunction is warranted here.

## ARGUMENT

### I. THE STATE DEFENDANTS ARE NOT IMMUNE FROM SUIT

In their sovereign immunity-based arguments, the State Defendants ignore precedent and/or state statutes which requires Plaintiff to name as defendants both AG Slatery and Governor Lee. Neither is entitled to sovereign immunity.

---

[4] Capitalized terms not otherwise defined herein have the meaning set forth in Plaintiffs' memorandum of law in support of their motion for a preliminary injunction (ECF No. 3) ("Plaintiffs' Opening Brief") (hereinafter cited as "Pls.' Br.").

First, where "parties challenge the constitutionality of any Tennessee statute, Tennessee law requires the Attorney General to be a party defendant in any such proceeding." *Kelly v. Lee*, No. 1:18-CV-00170-DCLC, 2020 WL 2120249, at *3 (E.D. Tenn. May 4, 2020) (collecting cases and also citing Tenn. Code Ann. § 29-14-107, and holding that AG Slatery was not immune from suit);[5] *see also Universal Life Church Monastery Storehouse v. Nabors*, 508 F. Supp. 3d 221, 238–40 (M.D. Tenn. 2020) (AG Slatery not entitled to immunity even though he had no "specific role" in enforcing statute where statute's constitutionality was at issue); *Cummings v. Beeler*, 223 S.W.2d 913, 916 (Tenn. 1949) ("We have construed this section to require the Attorney General to be a party defendant in any proceeding where the constitutionality of the Act of the legislature is before the Court on declaratory judgments proceeding.").

Similarly, Governor Lee is not entitled to immunity in light of "the substantial public interest" he possesses in enforcing the State's laws, which "places a significant obligation upon the Governor to use his general authority to see that state laws are enforced." *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n.5 (6th Cir. 1982); *see Roath v. Lee*, No. 3:17-CV-00995, 2019 WL 3066533, at *7 n.6 (M.D. Tenn. July 12, 2019) (Richardson, J.) (governor was proper defendant because "cases challenging the constitutionality of state statutes are generally brought under Section 1983 and are often alleged against the governor or another state official"); *see also Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *9 (M.D. Tenn. Nov. 9, 2017). As other Circuits have noted, the enforcement authority necessary to overcome sovereign immunity need not be direct, but may include informal elements, "involv[ing] compulsion or constraint." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). And as relevant here, the Governor appoints

---

[5] Unless otherwise indicated, all internal citations, quotation marks, other modifications and subsequent history have been omitted from all case citations.

the Commissioner of the Department of Education, Tenn. Code Ann. § 4-3-802(c), who serves at his pleasure, *id.* § 4-3-112(b). The Commissioner, in turn, has significant powers over the implementation of both law and policy throughout the state educational system. *See id.* § 49-1-201. In addition, all local public school systems are administered by a local board of education and a director of schools, *id.* § 49-1-102(c), and "[i]t is the duty of the board of education to assign to its director of schools the duty to [a]ct for the board in seeing that the laws relating to the schools and rules of the state and the local board of education are faithfully executed," *id.* § 49-2-301(b)(1)(A). Given that the Law is of state-wide effect and that its enforcement is delegated to various levels of State government, all ultimately ending with the Governor's duty to ensure the laws are faithfully executed, Governor Lee is not immune from suit. *See Haslam*, 2017 WL 5187117, at *9 (it is appropriate to sue the governor where "enforcement and administration responsibilities are diffused among different agencies and levels of state and local government").

The State Defendants' cited caselaw is inapposite, including *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421 (6th Cir. 2019), *Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015), and *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996). State Br. at 8–10. These cases stand only for the irrelevant proposition that officials with no connection to a suit may be entitled to sovereign immunity. However, they do not address the roles of Governor Lee and AG Slatery here as discussed above.

## II. PLAINTIFF HAS STANDING TO BRING HER CLAIMS AGAINST THE STATE DEFENDANTS

Mirroring their sovereign immunity arguments, the State Defendants principally argue that standing is lacking because the Law is enforced through private rights of action and they, thus, maintain no active role in the Law's enforcement. *See* State Br. at 12–14. However, the State Defendants still play key roles in this case, as outlined above, and therefore the State Defendants'

arguments similarly fail. Indeed, Plaintiff challenges the constitutionality of the provisions of the Law that preclude her from using the facilities that correspond with her gender identity. The fact that the law is enforced through a private right of action is no bar to the issuance of a preliminary injunction against the State Defendants. *See Women's Med. Pro. Corp. v. Taft*, 114 F. Supp. 2d 664, 668 & 705 n.55 (S.D. Ohio 2000) (plaintiff had standing with respect to governor and state attorney general in challenge to abortion bill notwithstanding statute's private right of action).

## III. PLAINTIFF'S CLAIMS ARE RIPE

As Plaintiff has standing, as discussed above, and is likely to succeed on the merits of her Equal Protection Claim against the State Defendants, for the reasons discussed in Plaintiffs' Opening Brief and further below, Plaintiff's claims against the State Defendants are ripe for adjudication. *See Tenn. State Conf. of the N.A.A.C.P. v. Hargett*, 441 F. Supp. 3d 609, 628 (M.D. Tenn. 2019) ("[I]f the plaintiffs' injuries, in a case such as this, are actual or imminent enough to confer standing, then the plaintiffs' claims are also sufficiently ripe, at least as a constitutional matter."); *Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, No. 3:16-CV-02738, 2017 WL 1021296, at *3 (M.D. Tenn. Mar. 16, 2017) (constitutional challenge was ripe because the issue presented was purely legal and did not require further factual development, and denial of judicial review would cause hardship to plaintiffs by subjecting them to discriminatory treatment).

## IV. PLAINTIFF SATISFIES THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION

### A. Plaintiff is Likely to Succeed on the Merits of Her Claims

#### 1. Plaintiff is Likely to Succeed on Her Title IX Claim

Defendants contend that the Law does not violate Title IX because Title IX permits public schools in general to provide sex-segregated facilities, relying in particular on 20 U.S.C. § 1686. *See* School Br. at 6, 9; State Br. at 16–17. As previously explained, Plaintiff does not

5

Case 3:21-cv-00600   Document 63   Filed 09/10/21   Page 5 of 15 PageID #: 388

challenge the general practice of providing certain sex-segregated facilities. *See* Pls.' Br. at 19. In fact, Plaintiff's desire (as is her right under Title IX) is to use the segregated facilities *that correspond with her gender identity*. Contrary to Defendants' position, nothing in the text of the statute supports the Defendants' conclusion that "sex" as used in Title IX only means "biological sex." Indeed, courts have repeatedly rejected the argument that the ability to provide separate facilities for different sexes gives schools license to bar transgender students from using the facilities that correspond with their gender identity. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 618 & n.16 (4th Cir. 2020) (holding that 20 U.S.C. § 1686's implementing regulation "cannot override the statutory prohibition against *discrimination* on the basis of sex" and does not permit schools to "rely on [their] own discriminatory notions of what 'sex' means") (emphasis in original); *Parents for Priv. v. Barr*, 949 F.3d 1210, 1227 (9th Cir. 2020) (same rejection).

The *only* case cited by Defendants in support of their position is the out-of-circuit decision in *Johnston v. University of Pittsburgh of Commonwealth System of Higher Education*, 97 F. Supp. 3d 657 (W.D. Pa. 2015). This decision, however, is contrary to now controlling Sixth Circuit precedent (as discussed immediately below), and subsequent courts, including those in the Sixth Circuit, have all rejected *Johnston*. *See Bd. of Educ. of Highland v. Loc. Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 875 (S.D. Ohio 2016) (holding that "*Smith* [*v. City of Salem, Ohio*, 378 F.3d 566 (6th Cir.2004)] is binding precedent on this Court and, therefore, it cannot follow the reasoning of *Johnston*"); *Evancho v. Pine–Richland Sch. Dist.*, 237 F. Supp. 3d 267, 296–97 (W.D. Pa. 2017) (declining to follow *Johnston*); *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1047 (7th Cir. 2017) (disagreeing with *Johnston*). Even the Middle District of Pennsylvania noted just two years

6

Case 3:21-cv-00600   Document 63   Filed 09/10/21   Page 6 of 15 PageID #: 389

after *Johnston* that its reasoning is no longer persuasive in light of intervening developments in the caselaw. *See A.H. ex rel. Handling v.Minersville Area Sch. Dist.*, 290 F. Supp. 3d 321, 329 n.2 (M.D. Pa. 2017) (observing that the analysis in "the more recent decisions" of *Evancho* and *Whitaker* is more persuasive than *Johnston*).

Both Defendants also ignore, and do not even attempt to distinguish, the Sixth Circuit's unbroken line of holdings in *Smith*, *Dodds*, and *G.R. Harris Funeral Homes* that discrimination against transgender persons necessarily constitutes discrimination on the basis of sex. *Smith*, 378 F.3d at 575 ("Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior . . . ."); *Dodds*, 845 F.3d at 221 (explaining *Smith* is "settled law in this Circuit"); *Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 578 (6th Cir. 2018) ("[D]iscrimination on the basis of transgender status necessarily entails discrimination on the basis of sex . . . .").

Instead, Defendants contend that the Sixth Circuit's decision in *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021), somehow compels the denial of any injunctive relief. *Meriwether*, however, only held that a professor's decision not to refer to a transgender student using her preferred female pronouns did not constitute discrimination "under any education program or activity" in violation of Title IX because it was not "serious enough" to "inhibit[] Doe's education or ability to succeed in the classroom." *Id.* at 511. *Meriwether* did not decide whether barring transgender students from accessing public school facilities that correspond with their gender identity constitutes impermissible discrimination "on the basis of sex" under Title IX. Thus, *Meriwether* is not relevant to the issues here, and the Sixth Circuit's decisions in *Smith*, *Dodds*, and *G.R. Harris Funeral Homes* are controlling.

In addition to ignoring these precedents, the State Defendants also ignore *their own prior interpretation* of a proposed bill effectively identical to the School Facilities Law. Indeed, in 2016 Tennessee considered enacting a law that would direct "public schools and institutions of higher learning to require their students to use restrooms and locker rooms that are assigned for use by persons of the sex indicated on the respective student's birth certificate." Tenn. Op. Att'y Gen. No. 16-15, 2016 WL 1533279, at *1 (Apr. 11, 2016) ("AG Opinion"). AG Slatery issued an opinion indicating that, if enacted, the proposed law would likely violate Title IX considering the U.S. Department of Education's interpretation that a "policy or law that prohibits a student from using a restroom consistent with his or her gender identity is discrimination based on sex and, therefore, violates Title IX." *Id.* at *2. The same conclusion applies to the now-enacted Law.

For this reason as well, the Defendants' arguments regarding the Spending Clause are unavailing. *See* State Br. at 20–21; School Br. at 9–11. It is *the Law itself*, not the injunctive relief requested by Plaintiff, that threatens Tennessee public schools' federal funding, as indeed the Attorney General's 2016 opinion concluded. AG Opinion at *4 (concluding that refusal to permit a student to access a facility consistent with his or her gender expression "could very well result in loss of federal funding").

### 2. Plaintiff is Likely to Succeed on Her Equal Protection Claim

#### a) Plaintiff's Equal Protection Claim is Subject to Heightened Scrutiny

Defendants do not dispute that the majority of courts apply heightened scrutiny to Equal Protection claims such as Plaintiff's here. This includes district courts in this Circuit, such as *Highland*, which concluded that heightened scrutiny applied because transgender persons are a quasi-suspect class. 208 F. Supp. 3d at 874. In declining to stay the preliminary injunction issued

in *Highland*, the Sixth Circuit did not disagree with this holding in *Dodds*. *See also Ray v. McCloud*, 507 F. Supp. 3d 925, 936–38 (S.D. Ohio 2020) (following *Highland* and holding that lack of binding authority from the Sixth Circuit or U.S. Supreme Court on this issue did not compel conclusion that only rational basis review applied).

To argue that rational basis review applies, Defendants rely on the pre-*Dodds* decision in *Ondo v. City of Cleveland*, 795 F.3d 597, 608–09 (6th Cir. 2015). Not only is *Ondo* supplanted by *Dodds*, it only considered the level of scrutiny to apply to claims involving sexual orientation, not gender identity. Thus, to conclude that only rational basis review applies here, the Court would have to conclude that the Sixth Circuit would not only disregard *Dodds*, but also the holdings of the Eleventh, Fourth, and Seventh Circuits, the only federal appellate courts to have expressly considered this issue, and all of which applied heightened scrutiny. *See Adams v. Sch. Bd. of St. Johns County, Fla.*, 3 F.4th 1299, 1307–08 (11th Cir. 2021); *Grimm*, 972 F.3d at 607–13; *Whitaker*, 858 F.3d at 1051. Accordingly, this Court, too, should respectfully apply heightened scrutiny. *See also* Pls.' Br. at 16.

### b) The Law Does Not Survive Even Rational Basis Review

Even if rational basis review were appropriate, the Law still does not pass the test. Here, Defendants attempt to defend the Law on the basis that it protects the privacy and safety interests of students. However, Defendants do not (and cannot) explain how a transgender student's use of such facilities violates other students' privacy or safety other than by resorting to the improperly discriminatory belief that a transgender student's "sex" means *only* their sex assigned at birth. State Br. at 22–25; School Br. at 18–20. Notably, Defendants do not cite *any* evidence (other than their own misguided beliefs about gender) indicating how A.B.'s use of such facilities would violate anyone's right to privacy or safety. On the contrary, A.B. has used the girls' bathroom since school began on August 5, 2021 and since that time no student, teacher, or employee has

9
Case 3:21-cv-00600   Document 63   Filed 09/10/21   Page 9 of 15 PageID #: 392

ever made a complaint. *See* Second Supplemental Declaration of Julie B., dated September 10, 2021, ¶ 2 ("Julie B. Second Suppl. Decl.").

Here again *Highland* is instructive. While acknowledging that the school "most certainly has a legitimate interest in the privacy and safety of its students," the court held the school's discriminatory policy did not satisfy rational basis review as there was "*no* evidence in the record that [the transgender student] . . . [wa]s likely to violate other students' privacy or put their safety at risk when using the girls' restroom." *Highland*, 208 F. Supp. 3d at 877 (emphasis in original).

For this reason, too, *Stuart v. Metropolitan Government of Nashville & Davidson County*, 679 F. Supp. 2d 851 (M.D. Tenn. 2009), cited by Defendants, is unavailing. *See* State Br. at 23; School Br. at 18 n.48. *Stuart* stands for nothing more than the unremarkable proposition that sex-segregated facilities exist in large part to protect individuals' reasonable privacy interests. *See Stuart*, 679 F. Supp. 2d at 859. Again, Plaintiffs do not challenge this general principle. However, there is no indication that the Plaintiff in *Stuart* was transgender, and nothing in that opinion even impliedly suggests that transgender individuals may be excluded from the bathrooms that correspond with their gender identity due to the alleged privacy interests of cisgender individuals.

The State Defendants also claim that "[e]xamples abound of individuals taking advantage of permissive restroom, shower, and locker room policies to perpetrate harassment and assault," but do not point to any credible evidence in support of this bald assertion, and in particular no evidence involving students as young as the first grade. State Br. at 25. The only support they cite is a single article which compiled alleged incidents from "conservative organizations" based on a Google search. However, the article makes clear that "[a] thorough review revealed that only a small number of cases actually involved perpetrators who were transgender, perpetrators who falsely claimed to be transgender, or perpetrators who attempted to disguise themselves as a

member of the opposite sex to gain restroom access." Brian S. Barnett *et al.*, *The Transgender Bathroom Debate at the Intersection of Politics, Law, Ethics, and Science*, 46 J. Am. Acad. Psychiatry & Law 232, 235 (2018), http://jaapl.org/content/jaapl/46/2/232.full.pdf. That article went on to conclude that "[f]rom a scientific and evidence-based perspective, *there is no current evidence that granting transgender individuals access to gender-corresponding restrooms results in an increase in sexual offenses*." *Id.* at 239 (emphasis added).

At the end of the day, because the Defendants' arguments are "based upon sheer conjecture and abstraction," they fail to show that Plaintiff is not likely to succeed on her Equal Protection claims. *Whitaker*, 858 F.3d at 1052; *see also Grimm*, 972 F.3d at 625–26 (Wynn, J., concurring) (rejecting the "transgender predator" myth, which is "harmful and false.").

### B. Plaintiff Will Suffer Significant Irreparable Harm Without Injunctive Relief

Defendants do not dispute that irreparable harm may be presumed in this case "as a matter of law" because Plaintiffs' Equal Protection and Title IX rights are being violated. *Highland*, 208 F. Supp. 3d at 877–78. Defendants' concession can and should end the irreparable harm inquiry.

Nor are any of Defendants' other arguments availing. Specifically, A.B.'s claims are not "moot." *See* School Br. at 23–24. According to the School Defendants, A.B.'s Support Plan will expire once A.B.'s class moves to the portable classrooms. *See* School Br. at 24; Affidavit of Lauren Bush ¶¶ 5–6 (ECF No. 58-1). However, every day that she is at school A.B. attends recess, eats lunch in the cafeteria, and attends an art class, all of which occur outside of the portables and in areas of the school where the most convenient bathrooms are multi-occupancy facilities. *See* Julie B. Second Suppl. Decl. ¶¶ 3–4. Thus, A.B. will suffer irreparable harm irrespective of her move to the portables by not being able to access the multi-occupancy bathrooms that correspond with her gender identity in those areas of the school. *Id.*

### C. The Balance of Hardships and Public Interest Weigh in Plaintiff's Favor

None of the Defendants will be harmed by the requested preliminary injunction. The State Defendants' Response goes to great pains to argue that they are entitled to sovereign immunity, Plaintiff lacks standing, and Plaintiff's claims are not ripe on the ground that Governor Lee and AG Slatery allegedly lack any power to enforce the Law. *See* State Br. at 10–16. Yet, they also claim that they will be harmed by a preliminary injunction that "prevents [them] from upholding a duly enacted law." *Id.* at 28. Simply put, the State Defendants cannot have it both ways.

The School Defendants also will not be harmed. They claim that they will be subject to "almost unlimited litigation," but do not allege even the *threat* of a single lawsuit being filed since schools in Wilson County opened on August 5, 2021. School Br. at 25. This is true even though A.B. has been permitted to use the girls' bathroom under the Support Plan since that time. *Id.* That she has done so now for a month without incident demonstrates that the requested injunctive relief will not harm the Defendants. *See* Julie B. Second Suppl. Decl. ¶ 2.

Further, the Court could, as the School Defendants concede, enjoin "the entirety" of the Law, which would "ensure that schools' compliance with the Court's Order . . . does not cause a torrent of litigation." School Br. at 31–32. Relatedly, the Court possesses "the inherent authority to enforce its own injunctive decree." *Bedel v. Thompson*, 956 F.2d 1164 (Table), 1992 WL 44883, at *4 (6th Cir. 1992). In particular, both the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283, permit Defendants to return to the Court to request an injunction against any claims filed under Section 6 of the Law in the future that threaten the enforcement a preliminary injunction. *See Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 847 (6th Cir. 2009) (district court's enjoining of state court litigation was "a proper means of enforcing its previously entered permanent injunction"). Thus, the mere possibility that the School

Defendants might face litigation in the future does not outweigh Plaintiff's interest in enjoying the rights guaranteed to her under Title IX and the Equal Protection Clause.

Defendants' remaining public interest arguments are reiterations of the same privacy and safety arguments raised in response to the merits of Plaintiff's Title IX and Equal Protection claims, and fail for the same reasons set forth above. Indeed, it is always in the public interest to issue an injunction that upholds well-established constitutional and civil rights, *Dodds*, 845 F.3d at 222, and courts have rejected the same arguments raised by Defendants here that permitting transgender students to use restrooms consistent with their gender identity will harm the interests of other (cisgender) students, or foretell the demise of sex-segregated facilities altogether. *See Whitaker*, 858 F.3d at 1054–55 (rejecting claim that injunction would harm 22,000+ students in school district, deny parents the right to direct their children's education and upbringing, place schools' federal funding at risk, or result in the demise of gender-segregated facilities at schools).

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Opening Brief, Plaintiff respectfully requests that the Court grant the requested preliminary injunction.

Dated: September 10, 2021        Respectfully submitted,

By: */s/ Tricia Herzfeld*
Tricia Herzfeld (BPR #26014)
BRANSTETTER STRANCH &
JENNINGS PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
T: (615) 254-8801
F: (615) 255-5419
triciah@bsjfirm.com

Adam S. Lurie*
Erez Liebermann*
Andrew Pak*

13

Sean Mooney*
Benjamin Kurland**
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
T: (212) 903-9000
F: (212) 903-9100
adam.lurie@linklaters.com
erez.liebermann@linklaters.com
andrew.pak@linklaters.com
sean.mooney@linklaters.com
benjamin.kurland@linklaters.com

Sarah Warbelow*
Jason Starr*
HUMAN RIGHTS CAMPAIGN FUND
1640 Rhode Island Avenue NW
Washington, D.C. 20036
T: (202) 628-4160
F: (202) 628-0517
Sarah.Warbelow@hrc.org
Jason.Starr@hrc.org

* Admitted *pro hac vice*
** *Pro hac vice* pending

*Attorneys for Plaintiffs A.S., a minor, by his next friends AMY A., mother, and JEFF S., father; and A.B., a minor, by her next friends JULIE B., mother, and ROSS B., father*

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of September, 2021, I served a copy of the forgoing document via the Court's CM/ECF Electronic Filing System upon the following Counsel:

Christopher C. Hayden
Andrew V. Sellers
PURCELL, SELLERS & CRAIG, INC.
P.O. Box 10547
Jackson, TN 38308
(731) 300-0737
chris@psclegal.com
andrew@psclegal.com

Rachel Hogan
Thomas William A. Caldwell
W. Carl Spining
Ortale Kelley Law Firm
330 Commerce Street
Suite 110
P.O. Box 198985
Nashville, TN 37201
(615) 256-9999
Fax: (615) 726-1494
rhogan@ortalekelley.com
wcaldwell@ortalekelley.com
cspining@ortalekelley.com

Alexander S. Rieger
Senior Assistant Attorney General
Public Interest Division
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
(615) 741-2408
Alex.rieger@ag.tn.gov

Matthew D. Cloutier
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-7908
Matt.Cloutier@ag.tn.gov

                                                    */s/ Tricia Herzfeld*
                                                    Tricia Herzfeld